## THE BADGER STATE.

*(Circuit Court, N. D. Illinois.   Jauuary 6, 1883.)*

1. COLLISION—PROPELLER ENTERING HARBOR.
    Where a propeller was entering a harbor on a dark night at a high rate of
    speed, she was held liable for a collision with a schooner leaving such harbor,
    notwithstanding the evidence was conflicting as to the position of the lights
    of the schooner, or the period at which a torch-light had been flashed on the
    schooner, and although the propeller may have had a proper lookout.
2. SAME—FAULT—HIGH RATE OF SPEED—WANT OF VIGILANCE.
    In such a case it is fault in a propeller, when entering a harbor on a dark night,
    not to slacken her speed and take the necessary precautions to avoid a collision.

Admiralty Appeal.

*C. E. Kremer,* for libelant.

*H. W. Miller,* for respondent.

DRUMMOND, J.   This is a libel filed by the owner of the schooner
Helen Blood to recover damages caused by a collision of the propeller
Badger State with the schooner on the evening of October 9, 1877.
A tug took the schooner in tow on that evening to start out on her
voyage from Chicago to Muskegon, Michigan, which, after towing her
out a short distance from the harbor, let her go, and the schooner was
then proceeding to make sail, and while doing so, the hour being about
9 o'clock, the propeller was observed some distance off, making for
the harbor of Chicago.   There is some difference of opinion among
the witnesses as to the precise course of the two vessels, but it seems
sufficient to say that the course of the schooner was about N. by W.,
and that of the propeller about S. ½ E.   The wind was not far from
S. W.   The collision took place only a short distance from the har-
bor, probably less than a mile from the pier.   The propeller struck
the schooner a glancing blow on the starboard side.   The night was
not very dark, and a light properly displayed on a vessel could be seen
at a distance of several miles.

The rule of law in a case like this is well settled.   It was the duty
of the propeller to avoid the schooner, and not having done so, and
the collision having taken place, it is incumbent on the propeller to
establish by competent evidence that the collision was caused, in
whole or in part, by some fault on the part of the schooner.

It is claimed by the defendant that the schooner was in fault in
three particulars: that the schooner did not, just before the time
of the collision, show a starboard or green light, as the law requires;
that she had no sufficient lookout; and that she was not properly

navigated at the time. The principal difficulty grows out of the first defense alleged. Was the collision caused in consequence of a green light not having been displayed by the schooner at a proper time and in a proper place? The law of congress required that there should be, "on the starboard side, a green light of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least two miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of 10 points of the compass, and so fixed as to throw the light from right ahead to two points abaft the beam on the starboard side." There seems to be no doubt but that the lights required by the statute were placed upon the schooner before she was released by the tug. There is the concurrent testimony of several of the witnesses that the lights were properly placed prior to that time. The doubt about the green light arises from the testimony of one or two of the witnesses on the part of the defense, and from the fact, as alleged by some of the defendant's witnesses, that the green light was not seen until immediately before the collision by those who were on the lookout on board the propeller. A witness who was on the tug testifies that just as they started out with the tow, and a man was about to put up the lights, he asked him not to put up the green light in its place until they got outside, because it would glare in his face, and he says that it was then put on the top or forward hatch, and was not put up on the vessel before he let go of her; and in this he is corroborated by the engineer of the tug. Some of the witnesses on the propeller, and who were on the lookout, state that if the green light had been in its proper place in the rigging it could have been seen from the propeller for a considerable time before the collision, and in season to have avoided it. These statements of the witnesses on the tug are distinctly contradicted by several witnesses on the schooner, who state that the lights, including the green light, were both in their proper places in the rigging, where they were distinctly visible; and the statement made by these witnesses on board of the tug that the green light was put upon the deck and turned away from the tug, does not seem to be very consistent with that made by several of the witnesses on the propeller, that they saw the green light; one of whom, especially, asserts that it was in the rigging, because if it had been turned away on the deck, as mentioned by the witnesses on board of the tug, it could hardly have been visible in the manner stated by witnesses on board of the propeller. If the green light was on the deck, and it was put in the rigging after that, it must have been by some por-

son on board of the schooner; and we have no testimony from any one on board of the schooner indicating a change of the position of the lights from the time they were first taken and put in place. It is distinctly stated by several witnesses that after the schooner returned to the harbor in consequence of the injury, the lights, including the green light, were suspended in the rigging. It is claimed on the part of the defense that those on board of the propeller constituting the lookout, among whom was the captain, must have necessarily seen the green light if it had been in its proper place. That would seem to be so, provided they did keep a proper lookout. It seems rather singular that the captain should first see a dark object, the vessel itself, and not the lights of the vessel or either of them. There are others on board of the propeller who state that they did see the lights, including the green light; but, as has already been stated, not long before the collision. It may have been in consequence of the fact of making sail, or the course of the two vessels in thus approaching each other, that the light was obscured for a time. It seems, however, very clear that there were not on board of the propeller sufficient precautions taken to avoid the collision. In the first place, the propeller was running too fast; she had not slackened her speed in approaching the harbor, which was nine miles an hour. Being so near the harbor after dark, she should have slackened her speed and kept a specially vigilant lookout for approaching vessels. This appears not to have been done. In the conflict of evidence as to the condition of the green light a short time before the collision, the statements made by the captain on the following day are not without a certain significance. It is true, he denies those statements, and a witness or two present say they were not heard; but another witness present, entirely disinterested, says that the statements were made, namely, that the lights of the schooner were seen, and no satisfactory explanation was then given why the schooner was not avoided by the propeller.

Admitting that this part of the case is not free from difficulty, still I am inclined to think the weight of the evidence is that the green light of the schooner was in its proper place and could have been seen, and the schooner avoided by the propeller, if proper care had been taken. In any event, I think it cannot be asserted, with any degree of confidence, that the absence of a green light in its proper place contributed to the collision.

It is claimed, on the part of the defense, that there was no sufficient lookout on board of the schooner. It may be admitted that

there was not any one stationed as a regular lookout at a proper place prior to the collision; but, if there had been, what difference would it have made? The object of a lookout was to ascertain and guard against approaching vessels. There were many men on board of the schooner who saw the light of the propeller a long way off. The object of the lookout, therefore, was fully accomplished. The light of the propeller was seen, and it was known that it was a propeller approaching. The duty of the schooner, under such circumstances, was to keep on her course without change; and I think the evidence establishes, beyond all doubt, that she did keep on her course, and that if there were any change of the schooner, it was when the collision was so imminent that the change did not contribute in any degree to the collision. Some of the witnesses on the part of the propeller state while some of the sails were full just at the point of collision, others were shaking in the wind, which, it is is claimed, would not have been the case provided she had kept on her course, as she had the wind free. How far this may have been effected, if true, by any change of course at the moment, or by the fact that the schooner had not made full sail on her, I do not think it is necessary to inquire.

There is nothing in the other point, that the schooner was not properly navigated. As already said, it was her duty to keep her course, and the evidence shows that she did; or, if there were any change, it was one that did not cause the collision. Witnesses on board of the schooner state that after the propeller had been observed for some time, and the indications were that proper measures were not being taken to avoid the schooner, a torch was lit and shown from the vessel, in order that additional evidence might be given to the approaching propeller of the danger of collision. Those on board of the schooner declare that this torch was shown in ample time to enable the propeller to avoid the schooner; while those on board of the propeller state that it was shown when the collision was unavoidable. I do not place any great stress upon the exhibition of the torch under the circumstances, because of the conflict of evidence in relation to the time when it was shown. In looking at the whole case, it seems to me that the necessary vigilance required of the propeller at the time and under the circumstances was not shown, and that the collision may be fairly said to have been the consequence of this want of vigilance on her part.

There seems to be no question about the damages, and the decree of the district court is affirmed.